PRODUCTION CREDIT ASSOCIATION OF MADISON, Plaintiff-Respondent, v. NOWATZSKI, Defendant-Appellant.

Supreme Court

*No. 76-737. Submitted on briefs May 2, 1979.— Decided June 29, 1979.*
(Also reported in 280 N.W.2d 118.)

346

For the appellant the cause was submitted on the brief of *Frank C. Lisheron, Jr.,* and *Lisheron's Law Offices* of Princeton.

For the respondent the cause was submitted on the brief of *Robert D. Martin, G. Kimbro Grimmer* and *Ross & Stevens, S. C.,* of Madison.

HEFFERNAN, J.   This is an action for conversion brought by Production Credit Association of Madison (PCA), a corporation engaged in making farm loans, against Walter Nowatzski, the transferee of its debtors, Allan R. and Rosalie Hein (the Heins).

On May 6, 1974, the Heins borrowed from PCA for the purchase of cows. The Heins gave PCA a security interest in various personal property, including "[a]ll farm equipment, now owned or hereafter acquired by Debtor." Listed among the farm equipment was a tractor and a self-propelled swather. The Heins later acquired a windrower, which is one of the items of personal property involved in this litigation, with insurance proceeds after the swather burned.

At a time which the record does not make clear, Walter Nowatzski, an uncle of Allan Hein, lent money to Allan for the purchase of farm equipment. Nowatzski testified that he had an unwritten agreement with Hein that if the loan was not repaid, Hein would turn over the farm equipment to Nowatzski. After the Heins defaulted in their loan payment to PCA, Hein turned over the tractor and windrower to Nowatzski. Nowatzski did not know of PCA's prior security rights, although it is undisputed that the financing statement was on file in the appropriate office.

After the default and after Hein commenced bankruptcy proceedings, PCA learned that the tractor and

windrower were in the possession of Nowatzski. It made a demand upon Nowatzski asking that the collateral be returned. That demand was refused by Nowatzski, and PCA brought an action for conversion against him.

The trial court found that PCA's security interest was perfected by the filing of a financing statement on May 6, 1974, and that after the Heins defaulted on the obligation to PCA, PCA made a demand that the collateral be turned over but that Nowatzski refused. The court also found that the tractor at the time of trial had a fair market value of $3,069 and a rental value of $600 per year and the windrower had a fair market value of $4,220 and an annual rental value of $700. The court found that the Heins' indebtedness to PCA exceeded $25,000. The court concluded that, as a matter of law, Nowatzski converted the tractor and windrower and that PCA's damages were $8,589, the sum of the value of the two pieces of equipment at the time of the trial plus one year's rental value for each item.

Two issues are presented by Nowatzski's appeal from the judgment: One, was Nowatzski, a transferee of the debtors, liable for conversion when he refused a demand by the debtors' secured party, PCA, to turn over collateral to which PCA had the right of possession under the Uniform Commercial Code and its security agreement with the debtors; and, two, were damages sufficiently proved and was the proper standard used for the measurement of damages?

The record shows that PCA had a perfected security interest in the Heins' farm equipment. After default in payment of the loan to PCA, the Heins transferred two items of the collateral—the tractor and windrower —to Nowatzski, contrary to the contract between PCA and the Heins. Both the failure to make payments when due and the transfer of the collateral without consent of the secured party constituted a breach of the contract. Each breach constituted a default, and upon default the

secured party could declare the entire debt due and require the debtors to turn over the collateral.

While it is undisputed that upon default PCA had the right to take immediate possession of the property from the Heins, Nowatzski asserts that he had no obligation to turn over the collateral. Although Nowatzski's brief on appeal asserts that PCA never demanded that Nowatzski turn over the property, this argument is unsupported by the record. Nowatzski's answer to the plaintiff's complaint specifically admitted that a demand was made upon him for the tractor and for the windrower and that he refused to turn them over. The trial court found that a demand was made and refused. That finding is not contrary to the great weight and clear preponderance of the evidence.

As a legal matter, Nowatzski argues that he had the right to possession of the collateral because sec. 409.311, Stats., authorizes a debtor to transfer collateral to third parties. Sec. 409.311 states:

"409.311   **Alienability of debtor's rights: judicial process.**   The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default."

On its face Nowatzski's argument, based solely on sec. 409.311, Stats., has some plausibility. That section of the statutes authorizes a physical transfer of the collateral, but it is equally apparent that only the debtor's rights inure to the benefit of the transferee. The rights of a security holder in the collateral are protected by the provisions of sec. 409.306 (2) [1] and survive transfer

[1] "409.306 (2)   Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was

of the collateral made without the secured party's consent.

It is undisputed that the transfer from the Heins to Nowatzski was without PCA's knowledge or approval. Hence, Nowatzski took the property subject to PCA's right of possession because the debtors had defaulted. *See, Production Credit Association of Chippewa Falls v. Equity Coop Livestock Sales Assn.,* 82 Wis.2d 5, 16, 261 N.W.2d 127 (1978) ; *First National Bank of Glendale v. Sheriff of Milwaukee County,* 34 Wis.2d 535, 149 N.W.2d 548 (1967). In *Production Credit Association of Chippewa Falls, supra,* we did not reach the question of whether a transfer of collateral which constitutes a default or a transfer which occurs after the debtor's default is a conversion. In that case it was assumed that the transfers occurred before default. In the instant case, however, the transfer occurred after default in payment, and under the agreement an unconsented transfer of the collateral was in itself a default. Sec. 409.503, Stats.,[2] provides that, unless otherwise agreed, a secured party upon default by the debtor has the right to take possession of the collateral. Accordingly, it is apparent that sec. 409.311, relied upon by Nowatzski, does not avoid a contract provision making an unconsented

authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

[2] "409.503 **Secured party's right to take possession after default.** Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under s. 409.504."

transfer of the collateral a default. A reasonable reading of sec. 409.311 is that, although it allows a debtor to transfer collateral, it does not invalidate the security agreement if the agreement makes the unconsented transfer a default.

One writer, in an article giving practical advice on the drafting of security agreements, disputes the interpretation of sec. 409.311, Stats., advanced by Nowatzski. Hogan, *Pitfalls in Default Procedure,* 2 U.C.C.L.J. 244, 246–47 (1970), states:

"One of the troublesome areas in the statute is Section 9–311, which seems to say that the debtor has a right to transfer his interest in the collateral, and it seems to be an unrestricted right to transfer his interest in the collateral. That raises a question. Suppose in the security agreement, as you should, you have said that a default occurs if the debtor sells the collateral. If you have as collateral anything that is not inventory, you want that kind of protection in the definition of default in your security agreement.

"Some people have suggested that Section 9–311 prohibits you from using a transfer of the collateral as the basis of a default. I think that thus far neither the statute nor the cases support that conclusion. Section 9–311 merely preserves the interest of the transferee. If the debtor sells the car, the transferee gets whatever the debtor had. Yet the sale can still be a default, and the buyer of that asset takes subject to the secured claim created by the debtor, and the buyer's ability to keep the assets would be subject to the third party's right to repossess.

"The definition of default is not provided in the Code. Default is a matter to be defined by your agreement. [Footnote omitted.]."

*Accord,* White and Summers, *Handbook of the Law under the Uniform Commercial Code* (Hornbook Series) 976–77 (1972); Braucher and Riegert, *Introduction to Commercial Transactions* 492 (1977); *Ryan v. Rolland,* 434 F.2d 353 (10th Cir. 1970); *Poydan, Inc. v. Agia*

*Kiriaki, Inc.,* 130 N.J. Super. 141, 325 A.2d 838 (1974), *aff'd per curiam,* 139 N.J. Super. 365 (App. Div. 1976), 354 A.2d 99.

██

Under secs. 409.311 and 409.306(2), Stats., the Heins could indeed transfer the collateral to Nowatzski, but Nowatzski took subject to PCA's security interest. By the terms of the agreement between the Heins and PCA, the transfer itself constituted a default which gave PCA the right to require that the collateral be surrendered. PCA also had the right to immediate possession because the debtors had defaulted on their loan payments. On the basis of either default, PCA had the right to the immediate possession of the property, and it could assert that right against Nowatzski. We conclude that PCA's action for conversion was the appropriate remedy when Nowatzski refused to surrender the collateral.

The Official U.C.C. comment 3 to sec. 409.306, Wis. Stats. Ann., states:

"[S]ince the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion."

██

Following the adoption of the Uniform Commercial Code, courts have generally recognized that conversion actions can be used to secure the rights of secured parties against transferees. *Beneficial Finance Co. v. Colonial Trading Co.,* 43 Pa. D. & C.2d 131 (1967); White and Summers, *supra* at 976–77 and cases cited at n. 71.

██

Some aspects of the law of conversion and its relevance to ch. 409, Stats., were discussed in the recent case of *Production Credit Association of Chippewa Falls v. Equity Coop Livestock Sales Assn., supra* at 10. We said therein, "Conversion is often defined as the wrongful

exercise of dominion or control over a chattel." Conversion may result from a wrongful taking or a wrongful refusal to surrender property originally lawfully obtained. *Schara v. Thiede,* 58 Wis.2d 489, 497, 206 N.W.2d 129 (1973); *Adams v. Maxcy,* 214 Wis. 240, 245, 252 N.W. 598 (1934); and Prosser, *Handbook of the Law of Torts* (4th ed. 1971), pp. 83–91. Where, however, there is no wrongful taking and the defendant rightfully comes into possession of the chattels, a demand by the rightful owner and a refusal by the alleged tortfeasor are necessary elements of the tort. Prosser, *supra* at 89.

Although the trial court found that PCA's financing statement was on file and that Nowatzski failed to check the record to determine whether he was violating the rights of PCA when he took possession of the chattels from the Heins, it is not necessary to determine whether Nowatzski's original taking was wrongful. The record shows that Nowatzski converted the tractor and windrower when he refused to surrender them to PCA upon demand. PCA had the right to possession. There was a demand and a refusal. Facts showing the elements of the tort of conversion were specifically found by the trial court, and those facts are not contrary to the great weight and clear preponderance of the evidence.

The general rule in Wisconsin is that, in an action for conversion, the wronged party may recover as damages the value of the property at the time of the conversion plus interest to the date of trial. *Traeger v. Sperberg,* 256 Wis. 330, 333, 41 N.W.2d 214 (1950); *Topzant v. Koshe,* 242 Wis. 585, 9 N.W.2d 136 (1943).

The trial court's award for the conversion of the tractor and the windrower totaled $8,589. This award was based on the testimony of Thomas J. Zwettler, PCA's Portage branch manager. When Zwettler was called as

a witness, defense counsel stipulated to Zwettler's "expertise." Zwettler testified that at the time of trial the book value of a tractor of the type involved was $3,069 and the book value of the windrower was $4,220. He also testified that a year's rental value of the tractor was $600 and the rental value of the windrower was $700. Zwettler acknowledged that he had not examined either piece of machinery, but he based his opinion on his familiarity with the type of equipment, his knowledge of current sales, and the figures which appeared in a guide published by the Wisconsin Retail Equipment Dealers.

The court, relying on the testimony of Zwettler, computed the value of the converted property not at the time of conversion, as is usually done, but at the time of trial. The record does not establish clearly the date of conversion. The record shows, however, that PCA's demand was made after a hearing in Hein's bankruptcy action on March 17, 1975, and prior to the filing of the complaint on February 6, 1976.

*Traeger v. Sperberg, supra,* recognized the general rule that in conversion the plaintiff may recover the value of the property at the time of the conversion plus interest to the date of trial. It qualified that rule, however, by stating:

"[I]t is universally recognized that the purpose of this rule is to compensate the plaintiff for the loss sustained because his property was taken." (at 333)

It is clear that the trial court's computation does not comport with the usual rule concerning the time of valuation. The valuation is not erroneous, however, because, in accordance with the rationale of *Traeger,* it reasonably compensates the wronged party for the loss. The properly admissible expert testimony of Zwettler was suffi-

cient to show value at the time of trial. The book value and testimony of Zwettler constituted a reasonable basis of computation, and the determination of the trial court based on that evidence was adequate proof of value on the date of trial. *See, DeSombre v. Bickel,* 18 Wis.2d 390, 398, 118 N.W.2d 868 (1963). No attempt was made to dispute the evidence of value as offered by Zwettler. That proof of value, however, was value at the time of the trial rather than at the time of conversion. The conversion, the refusal of Nowatzski to surrender the property, occurred at least nine months prior to trial. In view of the fact that the book value was based upon normal depreciation schedules, it is reasonably certain that the value on the date of conversion was greater than on the date of trial. While PCA may have proved less damages than it was entitled to, it is bound by that proof and Nowatzski, who is not aggrieved, cannot complain. In respect to him, if there was error, the error was harmless.

The rental figures were also supported by expert testimony and were undisputed by proof to the contrary. While interest has usually been accepted as a proper measure of damages to be added to the value of the property from the date of conversion to the date of trial, *Traeger,* as stated above, points out that the purpose of the award is to compensate the plaintiff for the loss sustained because of the taking of property. The rental value of the property is as appropriate a measure of damages as the interest which would be computed on the value of the property taken.

The general rule is that damages must be proved with reasonable certainty. *See, DeSombre v. Bickel, supra,* and *Maslow Cooperage Corp. v. Weeks Pickle Co.,* 270 Wis. 179, 191, 70 N.W.2d 577 (1955). The rental value

was established with reasonable certainty by the testimony of Zwettler.

The trial court's computations resulted in a reasonable award based on the relevant evidence adduced at trial and achieved the basic purpose of damages in an action for conversion. The award compensated the plaintiff, PCA, for the loss it sustained when Nowatzski refused to surrender the property to which PCA had the right to immediate possession.

*By the Court.*—Judgment affirmed.