State of Wisconsin, Plaintiff-Respondent,
v.
Michael Doud, Defendant-Appellant.
No. 02-2407-CR.
Court of Appeals of Wisconsin.
Opinion Filed: May 6, 2004.
Before Deininger, P.J. Vergeront and Lundsten, JJ.
ś1 DEININGER, P.J.
Michael Doud appeals an amended judgment convicting him of five counts of theft by contractor and ordering him to pay $107,412.51 in restitution to four of his victims. Doud claims the trial court erred in ordering restitution for certain items claimed by two of the victims. Applying the analysis we employed in State v. Longmire, No. 03-0300-CR (WI App Apr. 1, 2004, recommended for publication), we agree that certain items for which Doud was ordered to pay restitution are not authorized under WIS. STAT. § 973.20(5)(a) (2001-02).[1] Accordingly, we vacate a portion of the restitution ordered and remand for the entry of a reduced restitution amount.

BACKGROUND
ś2 Doud operated a construction business and, over a nineteen-month period, contracted with five different homeowners to perform either home construction or remodeling projects. Doud failed to complete the projects despite receiving substantial sums in the form of personal checks from the homeowners and draws from banks on construction loans. All five homeowners ultimately terminated their contracts with Doud and hired different contractors to complete the work.
ś3 A criminal investigation ensued, and the State charged Doud with five counts of theft by contractor, WIS. STAT. §§ 779.02(5) and 943.20(1)(b),[2] and one count of forgery. Doud pled no contest to the five counts of contractor theft; the forgery count was dismissed and read in; and the court sentenced Doud to an indeterminate six-year prison term, together with fifteen years concurrent probation. A condition of Doud's probation was that he pay restitution to each of the victims in an amount to be determined at a restitution hearing.
ś4 Doud reached an agreement prior to the restitution hearing with two of the five homeowners regarding the amount of restitution due them, and a third victim was deemed to have waived a claim for restitution. At the conclusion of the restitution hearing, the trial court ordered Doud to pay restitution to the two remaining homeowners, the Rickards and the Thorpes. The trial court ordered him to pay the Rickards $8,750 for labor they performed themselves to complete the construction of their home, and to pay the Thorpes $30,820 for the following four items: (1) $4,308 for a payment made to Doud for wood floors he never installed; (2) $4,915 for attorney fees; (3) $6,845 for additional construction costs; and (4) $14,752.41 for fifteen months of interest on the Thorpes' construction loan.
ś5 The court entered an amended judgment of conviction specifying a total restitution amount of $107,412.51. Doud appeals that judgment, claiming that the trial court erred in including certain items in the amount ordered as restitution. Additional facts will be set forth in the analysis which follows.

ANALYSIS

I.
ś6 We note at the outset that Doud challenges only the following items included in the restitution order: (1) $8,750 to the Rickards for their labor in completing work on their home; (2) $4,308 to the Thorpes for the wood floor payment; (3) the major part of the $6,845 to the Thorpes for additional construction costs; and (4) $14,752 to the Thorpes for construction loan interest. We also note that the State relies exclusively on the authority granted under WIS. STAT. § 973.20(5)(a) to justify the trial court's inclusion of the amounts Doud disputes.
ś7 In analyzing a similar dispute in Longmire regarding the amounts properly ordered as restitution under WIS. STAT. § 973.20(5)(a) in a theft by contractor case, we explained the limitations on the court's authority to order restitution under § 973.20(5)(a).[3] We quote and incorporate that explanation here:
To determine whether the disputed portions of the restitution order are proper, we must first consider WIS. STAT. § 973.20, which governs restitution in criminal cases. The trial court "shall" order restitution for a crime considered at sentencing "unless the court finds substantial reason not to do so and states the reason on the record." Section 973.20(1r). A primary purpose of restitution is to compensate the victim. See State v. Sweat, 208 Wis. 2d 409, 422, 561 N.W.2d 695 (1997). Section 973.20 "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution." State v. Kennedy, 190 Wis. 2d 252, 258, 528 N.W.2d 9 (Ct. App. 1994). Additionally, we are to "construe the restitution statute broadly and liberally in order to allow victims to recover their losses [that occur] as a result of a defendant's criminal conduct." State v. Anderson, 215 Wis. 2d 673, 682, 573 N.W.2d 872 (Ct. App. 1997) (emphasis added).
This mandate notwithstanding, the legislature has placed limits on the restitution a court may order. WISCONSIN STAT. 973.20(5) provides, in relevant part:
(5) In any case, the restitution order may require that the defendant do one or more of the following:
(a) Pay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing.
Whether an item included within a restitution order comes within statutory limitations on what a court may order is a question of law that we decide de novo. See State v. Rash, 2003 WI App 32, ś5, 260 Wis. 2d 369, 659 N.W.2d 189, review denied, 2003 WI 32, 260 Wis. 2d 753, 661 N.W.2d 101 (Wis. Apr. 22, 2003) (No. 02-0841-CR).
Restitution awarded under WIS. STAT. § 973.20(5)(a) is limited in two ways relevant to our present analysis. First, before a trial court may order restitution "there must be a showing that the defendant's criminal activity was a substantial factor in causing" pecuniary injury to the victim. State v. Johnson, 2002 WI App 166, ś16, 256 Wis. 2d 871, 649 N.W.2d 284 (emphasis added). In making its determination, however, a trial court may "take[] a defendant's entire course of conduct into consideration" including "`all facts and reasonable inferences concerning the defendant's activity related to the `crime' for which [he] was convicted, not just those facts necessary to support the elements of the specific charge.'" State v. Madlock, 230 Wis. 2d 324, 333, 602 N.W.2d 104 (1999) (emphasis added) ([quoted source] omitted). Put another way, we have said that a causal link for restitution purposes is established when "the defendant's criminal act set into motion events that resulted in the damage or injury." Rash, 260 Wis. 2d 369, ś7.
Second, restitution is limited to "special damages... which could be recovered in a civil action against the defendant for his â Ś conduct in the commission of a crime." WIS. STAT. § 973.20(5)(a) (emphasis added). This limitation restrains a sentencing court from ordering the payment of "general damages," that is, amounts intended to generally compensate the victim for damages such as pain and suffering, anguish, or humiliation. See State v. Behnke, 203 Wis. 2d 43, 60, 553 N.W.2d 265 (Ct. App. 1996). The term "special damages" as used in the criminal restitution context, means "[a]ny readily ascertainable pecuniary expenditure paid out because of the crime." State v. Holmgren, 229 Wis. 2d 358, 365, 599 N.W. 2d 876 (Ct. App. 1999).
Thus, WIS. STAT. § 973.20(5)(a) limits the items of damages that a sentencing court may order a convicted defendant to pay as restitution in a criminal case to a victim's pecuniary losses attributable to the defendant's criminal conduct.
Longmire, No. 03-0300-CR, slip op. at śś11-15.
ś8 We now apply the foregoing to the present facts.

II.
ś9 The Rickards contracted with Doud to build them a new home at a cost of $122,100. They obtained a construction loan from the State Bank of Cross Plains, and Doud was paid an initial draw of $65,000. Prior to contracting with Doud, the Rickards moved into a rental property owned by Doud and resided there for the duration of the time their house was under construction. Mr. Rickard testified that the rent on the property was $1,000 per month but, during the eleven months that they resided there, they paid rent only once.
ś10 Very little work on their home was done before Doud requested a second draw of $45,000. Upon discovering that the subcontractors had not been paid for work done to date, the Rickards cancelled their contract with Doud and hired another construction company to complete their home. The Rickards also commenced a civil suit against the State Bank of Cross Plains for its handling of the construction loan for the home Doud was to construct. The Rickards settled their claim with the bank for a cash payment of $60,000, a payment of $7,413 to cover their attorney fees, and a commitment for permanent financing for a home mortgage loan.
ś11 The Rickards requested restitution for a number of expenses or losses: square footage they claimed was missing from their completed home as compared to the size contracted for; reimbursement for Mr. Rickard's personal labor expended to complete certain construction items; and one-half of the contractor's fee that would have been paid to Doud had he completed the contract. Doud argued at the restitution hearing that all of these expenses should be offset by the ten months of rent-free housing he provided to the Rickards, as well as by the $60,000 cash settlement they received from the bank. The trial court ordered restitution of only $8,750, the amount Mr. Rickard claimed for 250 hours of his personal labor at a rate of $35 per hour, and it denied any offset to this amount.
ś12 Doud contends on appeal that the trial court improperly denied the offset, arguing that (1) the $60,000 bank settlement compensated the Rickards for their personal labor costs for which restitution was ordered, and (2) the Rickards benefited from the $10,000 in free rent Doud gave them. In addition, Doud argues that the restitution award of $8,750 for Mr. Rickard's personal labor costs do not meet the criteria set forth in WIS. STAT. § 943.20(5)(a) because this labor was not a "pecuniary loss" that could be compensated in a civil action, noting that the trial court expressed some doubt regarding the matter. He also argues that, even if such damages would be compensable in a civil action, the Rickards "did not provide a shred of evidence" to substantiate their claim.
ś13 We agree with Doud that he should not have been ordered to pay restitution for Mr. Rickard's labor, but not for the reasons Doud advances. The "crime considered at sentencing" that Doud committed against the Rickards was felony theft by contractor (see footnote 2). The $8,750 in restitution ordered for the Rickards is intended to compensate them for Mr. Rickard's time spent doing work that they asserted should have been performed by Doud (or a subcontractor paid by Doud) under the construction contract.[4] Doud's failure to complete the construction contract, however, was not a "crime considered at sentencing."
ś14 As we explained in Longmire, the most obvious item of restitution to which a victim of contractor theft is entitled is the amount that was paid to the contractor that was misapplied or converted to the contractor's own use. Longmire, No. 03-0300-CR, slip op. at ś19. By contrast, losses sustained by a homeowner because of shoddy work performed by the contractor (or, in this case, to complete work not performed at all by the contractor) may well be actionable as a breach of the construction contract, but these are breaches that do not arise from the contractor's criminal conduct (conversion of payments received in trust to personal use):
We have no quarrel with the State's contention that a criminal defendant can be required to pay restitution for "special damages," even if not directly caused by the criminal conduct, so long as some "causal nexus" is established between the crimes considered at sentencing and the damage for which restitution is sought. See, e.g., State v. Canady, 2000 WI App 87, ś9, 234 Wis. 2d 261, 610 N.W.2d 147. However, the $3,100 allowed in the restitution order for additional construction costs was not attributable to the fact that Longmire converted the lion's share of the $30,000 deposit he was given, or that he failed to return unexpended portions of the deposit after the same was demanded, or that he failed to notify the homeowners of a delay in completion of the contract. Rather, the "precipitating cause," id., for these expenditures was construction work, shoddily performed, but legally procured by Longmire in furtherance of his contractual obligations.
....
We emphasize that it is not the nature of the potential civil cause of action that distinguishes between amounts awardable as restitution and those that are not. WISCONSIN STAT. § 973.20(5)(a) permits restitution for "all special damages" that could be recovered in any type of "civil action," be it one for conversion, breach of contract, or even (as we discuss further below) a statutory cause of action based on administrative rule violations. Longmire's conversion of the deposit payment, his failure to return unexpended portions of it after a written demand, and his failure to give notice of a delay in completion of the project no doubt all constituted breaches of Longmire's contract with the homeowners. But the crucial fact is that each of these acts was also "a crime considered at sentencing," and hence, any losses attributable, directly or indirectly, to those acts by Longmire were proper items of restitution. Section 973.20(5)(a). The poor quality of the work actually performed under the contract, however, was purely a civil wrong and the criminal restitution statute cannot be enlisted to remedy it.
Longmire, No. 03-0300-CR, slip op at śś24, 26.
ś15 Although it is not entirely clear from the record, we assume that the reason the trial court did not order Doud to reimburse the Rickards for payments he received and misapplied was that those amounts were covered by the Rickards' settlement with the bank. It may well be that it cost the Rickards more money to complete their house than it would have had Doud fully performed his contract with them. That loss, however, stems from Doud's failure to do what he promisedâ Śto build them a house for $122,100â Śnot from his misapplication of the funds he received. That is, the Rickards would have been in the same position had Doud not stolen a dime from them if, for example, Doud had failed to go forward with the construction before receiving any payments, or if he had quit the project after beginning it and refunded all payments not expended on the work.
ś16 We acknowledge that it may be possible in a given case for a victim of contractor theft to show that a certain expenditure made by the victim for work or materials not provided by the contractor has a "causal nexus" to the contractor's criminal act of converting funds advanced.[5] The present record permits no such conclusion regarding the Rickards' claim for $8,750 in personal labor costs, however. On remand, $8,750 shall be deducted from the amount of restitution ordered in the appealed judgment. Given that this sum was the only restitution awarded the Rickards, it is not necessary for us to address Doud's claims for offsets against it for the bank settlement or for rent-free housing he provided.

III.
ś17 The Thorpes contracted with Doud to build an addition onto their home for $109,600. The Thorpes also procured a construction loan from the State Bank of Cross Plains and Doud received an initial draw of $65,000 to begin construction. Ms. Thorpe testified that Doud worked on the project for only three months before ceasing work. When, after a year, Doud had completed only half the project, the Thorpes terminated their contract with him and hired a different contractor to complete it.
ś18 Like the Rickards, the Thorpes also received a settlement from the bank for what they alleged was its mishandling of the construction loan disbursements to Doud. In exchange for a release waiving all claims against the bank "arising from or in connection with the Thorpe addition/remodeling," the bank agreed to make available to the Thorpes up to $55,000 for the purpose of "completing the addition/remodeling to [the Thorpes'] single-family residence and for paying any outstanding bills in relation thereto." The Thorpes' agreement with the bank also recited that $6,191.76 remained undisbursed from their original construction loan, and that sum would be used to satisfy "any outstanding bills in relation to the addition/remodeling and for further construction before any of the additional $55,000 described above."
ś19 The Thorpes requested the court to order restitution to them totaling $33,020, consisting of the following items: $2,200 for outstanding subcontractor bills; $4,308 they paid to Doud for wood floors that he did not install; $4,915 in attorney fees; $6,845 in additional construction costs they incurred that were not covered by the bank settlement; and $14,752.41 for interest they paid on their construction loan during the fifteen-month delay in completion caused by Doud's actions. The trial court ordered restitution of $30,820, including all requested items except the $2,200 in outstanding subcontractor bills.
ś20 Doud contends that the Thorpes are entitled to only $5,569.14 in restitution. He does not dispute either the attorney fees[6] or the $6,845 in additional construction costs, but contends that the latter sum should be offset by the $6,191.76 remaining from the Thorpes' original construction loan referenced in the settlement agreement. Doud also objects to the inclusion of the wood floor payment on the grounds that the Thorpes failed to provide evidence that they incurred any additional costs to have the floors installed. Doud argues further that, in any event, it was improper for the trial court to include restitution for the wood floor payment because the Thorpes' testimony "implies" that the wood floors were part of a separate agreement with Doud and, therefore, not part of his "conduct in the commission of a crime considered at sentencing." See WIS. STAT. § 973.20(5)(a). Finally, Doud challenges the inclusion of $14,752.41 for interest on the construction loan because the Thorpes would have been responsible for the interest on their construction loan even if Doud had not converted funds or failed to complete the construction project.
ś21 Regarding the wood floor payment, the State points out that there is no dispute as to the amount the Thorpes paid Doud to install wood floors or that Doud failed to install the floors. The State argues that it was therefore proper for the court to order Doud to reimburse the Thorpes for this payment. We agree.
ś22 As we have noted, Doud's criminal conduct vis ŕ vis the Thorpes was receiving money from them, in trust, to be applied to construction work and materials for their home, and then converting it to his own use. The record establishes that Doud received $4,308 from the Thorpes for the specific purpose of installing wood floors and that he misappropriated that sum by not installing the floors. It also appears from the record that the Thorpes' payments to Doud for the wood floors was by personal check, rather than by bank draws, and thus the $55,000 bank settlement arguably was not meant to cover the wood floor payments.
ś23 Even if installation of the wood floors was accomplished by the same contractor who completed the other construction work, who was paid in part out of the bank's $55,000, Doud is not necessarily entitled to an offset for the bank settlement as he asserts. The Thorpes established that they paid their new contractor $6,845 over and above the bank settlement sum to complete the construction work, an amount that exceeds the misappropriated wood floor payments. We therefore conclude that Doud has not met his burden to establish entitlement to an offset on account of the bank settlement,[7] and that the record adequately supports an order requiring Doud to repay $4,308 as restitution for the misappropriated wood floor payments.
ś24 As for the $6,845 the trial court included in the restitution order for the Thorpes' additional costs to complete the construction work, there is no showing in the record relating this additional cost to Doud's theft of construction payments made to him. That is, there is nothing in the record that would permit us to conclude that the additional costs were caused by anything other than Doud's failure to complete the contract for the agreed upon price. As with the Rickards' claim for personal labor costs to complete the work on their home, these costs may be recoverable in a civil action against Doud for breaching the construction contract, but nothing in the record ties the sum to Doud's criminal conduct in stealing the Thorpes' money.
ś25 Finally, we agree with the State that the court did not err by ordering restitution for construction loan interest in the amount of $14,752.41. Ms. Thorpe testified that this interest was for the fifteen-month period that the project sat idle, a delay that was directly attributable to Doud's misappropriation of construction funds and failure to complete the work. The trial court found that "it's undisputed that the term of the construction loan was extended by 15 months by reason of the delay in completing the work. That delay resulted in their having to make interest payments on the construction loan for the extra 15 months."
ś26 We acknowledge, as Doud maintains, that the Thorpes would have had to pay interest on the money they borrowed for the project even if he had fully performed the contract. We would add that a delay in completing construction, and hence additional months of interest payments, would also likely have resulted from Doud's failure to complete the work even if he had not misappropriated payments he had received. Unlike with the additional construction costs incurred by the Thorpes and the Rickards, however, we conclude that the Thorpes have established a causal link between Doud's theft and these interest payments.
ś27 The funds that Doud misappropriated were derived from borrowed funds, and, thus, the Thorpes incurred pecuniary injury not only from the loss of those funds, but also from the interest they were required to pay during the period they received nothing in return for the stolen funds. There can be no question that Doud's theft of construction payments "was a substantial factor in causing" the stoppage of work. State v. Johnson, 2002 WI App 166, ś16, 256 Wis. 2d 871, 649 N.W.2d 284. Doud points to nothing in the record that would indicate that the Thorpes did not proceed in a reasonably prompt fashion to acquire replacement funding, engage another contractor and complete the work. Similarly, Doud does not argue that any part of the interest during the fifteen-month hiatus is attributable to draws he actually applied to work done for the Thorpes, although this may well have been the case.[8] Accordingly, we conclude that this interest represents a pecuniary loss that would be recoverable in a civil action by the Thorpes against Doud for his criminal act of stealing their money,[9] and it was thus properly included in the restitution order.
ś28 In summary, on remand, the amount ordered as restitution to the Thorpes should be reduced by $6,845, leaving a restitution amount in their favor of $23,975.41 (unchallenged attorney fees of $4,915; wood floor payments of $4,308; and interest of $14,752.41). Together with the $8,750 reduction we have ordered regarding the Rickards' claim, the $6,845 reduction in the Thorpes' restitution results in a total reduction of $15,595. The corrected restitution amount of $91,817.51 shall be inserted in the amended judgment.

CONCLUSION
ś29 For the reasons discussed above, we affirm the appealed judgment in part, reverse it in part, and remand for the entry of a corrected restitution amount.
By the Court. â Ś Judgment affirmed in part; reversed in part and cause remanded with directions.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] WISCONSIN STAT. § 779.02(5) provides, in relevant part:

[A]ll moneys paid to any prime contractor â Ś by any owner for improvements, constitute a trust fund only in the hands of the prime contractor â Ś to the amount of all claims due or to become due or owing from the prime contractor â Ś for labor and materials used for the improvements, until all the claims have been paid â Ś. The use of any such moneys by any prime contractor â Ś for any other purpose until all claims â Ś have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor â Ś of moneys so misappropriated and is punishable under s. 943.20.
WISCONSIN STAT. § 943.20(1)(b), in turn, provides that whoever
[b]y virtue of his or her office, business or employment â Ś having possession or custody of money intentionally uses, transfers, conceals, or retains possession of such money without the owner's consent, contrary to his or her authority, and with intent to convert to his or her own use or to the use of any other person except the owner [is guilty of theft].
If the amount converted exceeds $2,500, the theft constitutes a felony. See § 943.20(3)(c).
[3] We note that the defendant in Longmire was also convicted of home improvement fraud under WIS. STAT. § 100.26(3) for violating certain trade practice regulations. State v. Longmire, No. 03-0300-CR, slip op. at ś5 and n.3 (WI App Apr. 1, 2004, recommended for publication). The portions of the Longmire analysis which we incorporate and rely upon here are not affected by that factual distinction. Neither is our present analysis affected by the fact that, in this case, a forgery count was read in for sentencing purposes. The Rickards and the Thorpes were not victims of Doud's forgery, and thus, Doud's commission of that crime has no bearing on any losses suffered by these victims of Doud's criminal conduct.
[4] Mr. Rickard testified that, for approximately eleven weeks after terminating his contract with Doud, he spent time after the conclusion of his own work day doing various tasks necessary to complete construction on his house that would have been performed by Doud and his subcontractors such as hanging cabinets, putting in insulation, installing flooring, countertops, light fixtures and other finishing work. He testified that, although he also hired subcontractors to perform work to complete the house, the work he performed did not duplicate work that he was also paying the subcontractors to perform. He also testified, without opposition, that the rate of $35 an hour was the market rate for contractor labor and that this was, in fact, the same rate charged by Doud and his laborers.
[5] For example, suppose a contractor converts funds that were to have paid for a shipment of bricks at a given price. Not receiving payment, the brick supplier refuses to ship the bricks or retrieves them from the site. When the owners or their new contractor attempt several months later to reacquire bricks for the house, the price of bricks has doubled. The increased cost of the bricks is arguably a cost attributable to the theft of the original payment, as opposed to being a result of the contractor's failure to complete the work for the agreed upon price.
[6] We concluded in Longmire that attorney fees that might be recoverable under a statutory cost-shifting statute, WIS. STAT. § 100.20(5) (creating cause of action for damages caused by administrative code violations), were not a proper item for restitution because they do not constitute "special damages." See Longmire, No. 03-0300-CR, slip op. at śś30-32. The State points in this case to WIS. STAT. § 895.80, which creates a cause of action to recover losses incurred "by reason of intentional conduct â Ś that is prohibited under â Ś s. 943.20 [and other criminal statutes]." Section 895.80(1). That statute also allows cost shifting for a prevailing plaintiff. Section 895.80(3)(b). Because Doud has not challenged the Thorpes' entitlement to restitution for their attorney fees, either here or in the trial court, we do not address whether the Thorpes' attorney fees were properly included in the restitution amount.
[7] Although victims bear the burden of establishing the amount of pecuniary injury they incurred on account of a crime, defendants bear the burden of establishing their entitlement to and the amount of any offset to be allowed. See Longmire, No. 03-0300-CR, slip op. at ś16.
[8] As we discussed in Longmire, No. 03-0300-CR, slip op. at ś16, the burden is on a defendant convicted of contractor theft to establish the value of any offsets for work the contractor actually performed or paid for. See State v. Walters, 224 Wis. 2d 897, 907-08, 591 N.W.2d 874 (Ct. App. 1999).
[9] Conversion damages are intended to compensate a wronged party for the loss sustained because his or her property was wrongfully taken. Traeger v. Sperberg, 256 Wis. 330, 333, 41 N.W.2d 214 (1950). Thus, an owner of converted property generally may recover its value at the time of the wrongful taking, plus interest to the date of trial. Id.; Production Credit Ass'n of Madison v. Nowatzski, 90 Wis. 2d 344, 354, 280 N.W.2d 118 (1979).