STATE of Wisconsin, Plaintiff-Respondent,

v.

Edward W. JOHNSON, Jr., Defendant-Appellant.

Court of Appeals

*No. 01–0382–CR. Submitted on briefs December 7, 2001.—
Decided June 27, 2002.*

2002 WI App 166

(Also reported in 649 N.W.2d 284.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert T. Ruth* of *Ruth Law Office* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sandra L. Nowack*, assistant attorney general.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. ROGGENSACK, J. Edward Johnson contends that the circuit court's order requiring him to pay restitution pursuant to WIS. STAT. § 973.20 (1997–98)[1] should be reversed on several grounds and that the court erred in refusing to permit the discovery he requested. We conclude that the circuit court's restitution order should not be vacated as untimely because there was a valid reason for holding the restitution proceedings outside of the statutory time period and because there was no prejudice to Johnson. We further conclude that the circuit court had authority under § 973.20 to require Johnson to reimburse the victim's stepfather for the expenses he incurred installing a home security system, but not for his lost wages. Finally, we conclude that the circuit court properly denied Johnson's request for discovery of the victim's counseling records. Accordingly, the order of the circuit court is affirmed in part and reversed in part.

## BACKGROUND

¶ 2. On October 13, 1998, Johnson was convicted of one count of false imprisonment and one count of disorderly conduct. Johnson, who was seventeen years old when the criminal conduct occurred, participated in forcing two younger girls into a car, refusing to release them and, over the course of several hours, harassing

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

and mistreating the girls. One of the victims, J.M.K., lived only five or six houses from Johnson's parents' house.

¶ 3. At the sentencing hearing, in an effort to avoid a jail term, both Johnson and his counsel expressly assented to paying "the expenses that have been incurred thus far" as restitution. At that time, J.M.K.'s stepfather, W.L., had completed a restitution form that claimed the following expenses incurred through July 10, 1998: two days missed work for W.L. ($277.50), J.M.K.'s damaged clothing ($64.96), three trips to Jefferson ($38.40), a security system ($1,005) and ongoing counseling (then estimated at $690), for a total to that date of $2,075.86.

¶ 4. Ultimately, the court sentenced Johnson to twelve months in jail on the false imprisonment conviction and three years of probation for the disorderly conduct conviction. The court ordered restitution as a condition of probation, but because victim expenses were ongoing, the court directed the Department of Corrections (DOC) to compute the final amount of restitution and to identify to whom the money should be paid, at a later date. The court provided that Johnson would have the right to return to court for a hearing on restitution when the final figures were known.

¶ 5. DOC filed a request for a restitution hearing on May 15, 2000. The hearing was held on September 21, 2000. The primary issues were: (1) whether the request for restitution was timely under WIS. STAT. § 973.20(13)(c)1 and (2) whether the circuit court had authority under § 973.20 to order restitution for certain losses incurred and expenses paid by J.M.K.'s stepfather.

876

¶ 6. The court's final restitution order required Johnson to pay a total of $1,816.96 to J.M.K.'s mother and stepfather, on behalf of J.M.K. The specific items included in the restitution order were: (1) clothing ($64.96); (2) mileage for traveling to four court appearances ($52); (3) counseling and medication co-payments ($140); (4) a home security system ($1,005); and (5) J.M.K.'s stepfather's lost wages due to attending court proceedings on four days ($555). Johnson appeals.

## DISCUSSION

### Standard of Review.

■

¶ 7. The scope of a circuit court's authority to order particular conditions of probation, including restitution, presents a question of statutory interpretation that we review *de novo*. *State v. Baker*, 2001 WI App 100, ¶ 4, 243 Wis. 2d 77, 626 N.W.2d 862. Circuit courts have discretion in deciding on the amount of restitution and in determining whether the defendant's criminal activity was a substantial factor in causing any expenses for which restitution is claimed. *State v. Canady*, 2000 WI App 87, ¶¶ 6, 12, 234 Wis. 2d 261, 610 N.W.2d 147; *State v. Behnke*, 203 Wis. 2d 43, 57–58, 553 N.W.2d 265, 272 (Ct. App. 1996). When we review a circuit court's exercise of discretion, we examine the record to determine whether the circuit court logically interpreted the facts, applied the proper legal standard and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach. *Crawford County v. Masel*, 2000 WI App 172, ¶ 5, 238 Wis. 2d 380, 617 N.W.2d 188.

## Timeliness.

¶ 8. When a circuit court orders restitution but does not determine the amount of restitution at sentencing, WIS. STAT. § 973.20(13)(c) sets forth a list of procedures that the court may use to finalize the amount due. *See State v. Evans*, 2000 WI App 178, ¶ 14, 238 Wis. 2d 411, 617 N.W.2d 220. Each of the options set forth in § 973.20(13)(c) includes a time frame for finalizing the restitution order. However, we have previously held that the time expectations found in § 973.20(13)(c) are directory, not mandatory. *State v. Perry*, 181 Wis. 2d 43, 56–57, 510 N.W.2d 722, 726–27 (Ct. App. 1993). Accordingly, restitution orders from proceedings held outside of the statutory time period for valid reasons may be upheld, provided that doing so will not result in prejudice to the defendant. *Id.*

¶ 9. In this case, Johnson contends that the circuit court's initial restitution order was made pursuant to WIS. STAT. § 973.20(13)(c)[1][2] and therefore, DOC was required to file a proposed final order with the court within ninety days of the November 17, 1998 sentencing hearing. Because the proposed order was not filed until May 15, 2000, Johnson asserts that the restitution

---

[2] WISCONSIN STAT. § 973.20(13)(c) provides, in relevant part:

If the defendant stipulates to the restitution claimed by the victim or if any restitution dispute can be fairly heard at the sentencing proceeding, the court shall determine the amount of restitution before imposing sentence or ordering probation. In other cases, the court may do any of the following:

1. Order restitution of amounts not in dispute as part of the sentence or probation order imposed and direct the appropriate agency to file a proposed restitution order with the court within 90 days thereafter, and mail or deliver copies of the proposed order to the victim, district attorney, defendant and defense counsel.

order should be vacated. The State makes no attempt to argue that the restitution proceedings were timely under § 973.20(13)(c), but instead it argues that circumstances present in this case show that the order should not be vacated. We agree with the State.

¶ 10. In regard to whether there is a valid reason for the delay, we conclude that there is. First, Johnson agreed at sentencing that restitution was appropriate, and his counsel expressly acquiesced in the circuit court's decision to postpone a final decision on restitution because expenses were still accumulating. Second, while Johnson complains that a proposed final order had not been submitted even ninety days after J.M.K. submitted her "final" claims for counseling and medication costs, he ignores the fact that J.M.K. was only one of the victims that the circuit court was asked to consider for purposes of restitution. The original sentencing hearing encompassed consolidated cases, and the May 15th hearing request included proposed restitution orders for J.M.K. and for the victim in the consolidated case.[3] Significantly, DOC's request stated that the victim in the consolidated case "continues in counseling and has ongoing medication costs as a result of the offense." Third, Johnson never raised a timeliness objection to the manner in which the probation agent collected information and arranged for a final hearing until he raised the issue by an oral motion on

[3] Johnson ultimately reached a settlement concerning restitution to the victim in the consolidated case. However, the settlement did not occur until after the proposed restitution orders were filed on May 15, 2000. Johnson's counsel was clear in arguing his oral motion before the circuit court that he did not challenge any delay that occurred between the May 15th request and the date of the actual restitution hearing.

the day of the restitution hearing. In light of the factors that a sentencing court must consider when ordering restitution, *see* Wis. Stat. § 973.20(13)(a), we conclude that it was not reversible error to delay restitution proceedings when the victim in a consolidated case was still accumulating compensable costs. *See Perry*, 181 Wis. 2d at 56–57, 510 N.W.2d at 726–27 (concluding that the circuit court had a valid reason for delaying restitution proceedings when it waited for the conclusion of a co-defendant's trial; proceeding in that fashion allowed the court to consider the defendants' restitution obligations in a consolidated fashion).

¶ 11. On the issue of prejudice, Johnson argues that due to his limited ability to pay, the delay in finalizing his restitution obligation caused him to be behind in his payments and therefore, he will be hard-pressed to fulfill his restitution obligation before the expiration of his probation. He further argues that the circuit court expressly recognized that his limited ability to pay would require that he pay over the entire course of his probation period. We are not persuaded that Johnson was prejudiced by the delay.

¶ 12. First, Johnson's ability to pay was not raised in the circuit court. At the restitution hearing, Johnson's attorney stated, "We have not challenged and. I do not intend to challenge the question of ability to pay during the period of probation." Consistent with that statement, Johnson presented no testimony concerning his ability to pay. Accordingly, he has waived this issue. *See State v. Schmaling*, 198 Wis. 2d 756, 762, 543 N.W.2d 555, 558 (Ct. App. 1995).

¶ 13. Second, we disagree with Johnson's characterization of the circuit court's statements regarding ability to pay. The final amount of restitution ordered

was less than the amount the circuit court was contemplating at sentencing. In particular, the circuit court assumed at the time of sentencing that Johnson would be liable for the portion of the victims' medical expenses that were covered by insurance. The court stated that it anticipated that these amounts would run into the "thousands of dollars." As it turns out, the insurers never appeared to collect any amounts they paid, and the bulk of the items included in the final restitution order for J.M.K. were items that J.M.K.'s stepfather had listed on the original victim restitution form that had been filled out prior to the 1998 sentencing hearing. Given the total amount of restitution ultimately ordered by the court and considering the time that remained on Johnson's term of probation after the May 15th proposed order was submitted, we are not persuaded that the delay in the restitution proceedings prejudiced Johnson's ability to pay.[4]

¶ 14. Because there was a valid reason for exceeding the statutory time period set forth in Wis. Stat. § 973.20(13)(c) and because no prejudice resulted from the delay in the restitution proceedings, we conclude that the circuit court's restitution order should not be vacated as untimely. We further conclude that requiring Johnson to comply with the terms of the order will further the primary purpose of § 973.20, which is to facilitate providing complete restitution for the victim of a crime. *See State v. Krohn*, 2002 WI App 96, ¶¶ 11,

[4] Johnson's counsel also acknowledged at the final restitution hearing that Johnson's probation officer had been requiring Johnson to make payments of $50 per month prior to that hearing.

13, 252 Wis. 2d 757, 643 N.W.2d 874; *Canady*, 2000 WI App 87 at ¶ 8.

## Restitution to a Child Victim's Stepparent.

¶ 15. Johnson challenges the circuit court's authority to order him to pay restitution to J.M.K.'s family for (1) the amount J.M.K.'s stepfather paid for a home security system and (2) J.M.K.'s stepfather's wages that were lost due to the time spent attending court proceedings with J.M.K. According to Johnson, a stepparent is not a victim within the meaning of Wis. Stat. § 973.20, and the challenged items are not otherwise compensable under § 973.20.

Wisconsin Stat. § 973.20(1r) directs, in relevant part:

> When imposing sentence or ordering probation for any crime for which the defendant was convicted, the court, in addition to any other penalty authorized by law, shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing ... unless the court finds substantial reason not to do so and states the reason on the record. Restitution ordered under this section is a condition of probation, extended supervision or parole served by the defendant for a crime for which the defendant was convicted.

¶ 16. We have held that Wis. Stat. § 973.20(1r) creates a presumption that restitution will be ordered in criminal cases and that the restitution statute should be interpreted broadly to allow victims of crime to recover their losses. *Canady*, 2000 WI App 87 at ¶¶ 7–8. The circuit court's authority to order restitution extends to certain types of lost income and reasonable out-of-pocket expenses resulting from cooperating

in the investigation and prosecution of the crime, as well as to "all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing." Section 973.20(5). Additionally, before a circuit court orders restitution, there must be a showing that the defendant's criminal activity was a substantial factor in causing the claimed losses.[5] *Canady*, 2000 WI App 87 at ¶ 9.

¶ 17. The restitution statute does not define the term "victim." However, in a case decided after the briefing in this case was completed, we held that " 'victim' in WIS. STAT. § 973.20(1r) is most reasonably interpreted using the definition in WIS. STAT. § 950.02(4)(a)," which is a related statute. *State v. Gribble*, 2001 WI App 227, ¶¶ 70–71, 248 Wis. 2d 409, 636 N.W.2d 488. When the person against whom a crime was committed is a child, § 950.02(4)(a)2 provides that "victim" also includes a "parent, guardian or legal custodian of the child."

■
¶ 18. Perhaps anticipating the result reached in *Gribble* where expenses incurred by an aunt of the victim were held not recoverable as restitution, Johnson argues that J.M.K.'s stepfather is not included among the family members who are considered victims under WIS. STAT. § 950.02(4)(a)2 because he is not a natural parent, a guardian or a legal custodian of J.M.K.

---

[5] On appeal, Johnson does not contest the circuit court's finding that the criminal activity was a substantial factor in causing the expenditures.

The State contends that we should interpret Wis. Stat. § 973.20(1r) broadly enough to include a stepparent as a victim.

¶ 19. It is uncontested that W.L. is not the guardian or legal custodian of J.M.K. However, "parent" is not defined in ch. 950. Therefore, it could be interpreted to include both a natural parent and a stepparent. In attempting to determine legislative intent, we note that in other sections of the statutes in which the legislature meant to include a stepparent as it described those who have a relationship to a child, it clearly did so by listing both parents and stepparents. *See, e.g.,* Wis. Stat. § 767.245(1) (relating to those persons who may petition for visitation rights with a child); Wis. Stat. § 48.02(15) (listing both parents and stepparents as a child's "relatives"); Wis. Stat. § 880.155 (addressing visitation by a grandparent or stepparent); Wis. Stat. § 948.01(3) (defining persons responsible for a child's welfare). We have identified no occasions where the legislature has indicated directly or indirectly that it meant "parent" to include both natural parents and stepparents. Therefore, we conclude that the legislature did not intend to include both natural parents and stepparents within the class of persons identified as a "parent" in Wis. Stat. § 950.02(4)(a)2. Accordingly, we conclude that W.L. is not entitled to be paid restitution as a "victim" because of § 950.02(4)(a)2.

¶ 20. However, that does not end our inquiry because Wis. Stat. § 973.20(5)(d) also permits a circuit court to order restitution that reimburses an "other person" who has compensated a victim for a loss. Johnson does not contest that W.L. may qualify for restitution as an "other person" under § 973.20(5)(d).

Instead, he contends that because J.M.K.'s stepfather paid for the security system without trying to collect its cost from J.M.K. or her mother, he has not "compensated a victim for a loss" within the meaning of § 973.20(5)(d). We are not persuaded by Johnson's argument.

¶ 21. At the restitution hearing, J.M.K.'s stepfather testified that he purchased the home security system shortly after Johnson's mistreatment of J.M.K. to help her feel more secure.[6] J.M.K. testified that Johnson was still coming around the neighborhood after the incident, even though he no longer lived with his parents. She also testified that she continued to be afraid of Johnson and that she feared that he might harm her at some point in the future. Additionally, Johnson had threatened that he would "get even" with J.M.K. if she ever told anyone about the incident. From this testimony, the circuit court reasonably could have inferred that J.M.K. had lost her sense of security within her home due to Johnson's criminal acts. Accordingly, we conclude that there was sufficient testimony to establish a causal connection between Johnson's criminal conduct and the need for the security system that

---

[6] During the course of Johnson's and his companion's mistreatment of J.M.K., he locked her in the car trunk and drove erratically, swerving and making abrupt stops, causing her to be tossed around inside the trunk. When he let her out of the trunk, he threw her shoes in a lake and ordered her to find the shoes, while hitting her with stones and gravel. J.M.K. was slapped across the face, pulled to her feet by her hair and forced to place her lips to Johnson's clothed buttocks.

After these acts, J.M.K. suffered from flashbacks, lost sixteen pounds and withdrew from school and social activities. She was afraid to go out of the house, would not stand near windows in her own home and cried herself to sleep.

W.L. purchased to try to restore J.M.K.'s lost sense of security. Therefore, we conclude that the circuit court acted within its discretion in characterizing the cost of the security system as an item of J.M.K.'s special damages in this case, and we further conclude that W.L. compensated J.M.K. by paying for the system. *See Behnke*, 203 Wis. 2d at 60–61, 553 N.W.2d at 273 (upholding circuit court's restitution order under WIS. STAT. § 973.20 (1993–94) for a new dead bolt lock for the victim's residence because "any specific expenditure by the victim paid out because of the crime" is a "special damage"; defendant had imprisoned, battered and sexually assaulted the victim in a place other than the victim's residence, but defendant knew where the victim lived).[7]

¶ 22. However, Johnson's contest over the $555 that W.L. lost in wages for the days he took off from work to accompany J.M.K. to court appearances stands on different footing than does the security system due to the statutory provisions that specifically identify who may collect lost wages as restitution. WISCONSIN STAT. § 973.20(5)(b) allows a "person against whom a crime . . . was committed" to recover such lost wages as restitution. W.L. is not such a person, and there is no comparable provision that applies to a child-victim's stepparent. Further, because J.M.K.'s stepfather's lost wages were his own, we agree with Johnson that

[7] *Compare State v. Behnke*, 203 Wis. 2d 43, 60–61, 553 N.W.2d 265, 273 (Ct. App. 1996), *with State v. Heyn*, 155 Wis. 2d 621, 456 N.W.2d 157 (1990) (affirming the circuit court's discretionary decision to require reimbursement for the cost of a home security system as a reasonable and appropriate condition of probation under WIS. STAT. § 973.09(1)(a) (1985–86)).

J.M.K.'s stepfather has not compensated any victim for those lost wages within the meaning of § 973.20(5)(d).

¶ 23. The circuit court held that W.L.'s lost wages were tantamount to a victim's lost wages or property due to the operation of Wisconsin's marital property laws. The State mentions, but does not develop this argument on appeal. Additionally, because there is no language in the restitution statute or in WIS. STAT. § 950.02(4)(a) suggesting that restitution be permitted through such an indirect route, we conclude that the restitution statute intended to limit the recovery of lost wages for attending court proceedings to the persons identified in WIS. STAT. § 973.20(5)(b).

¶ 24. The State next argues that judicial estoppel prevents Johnson from contesting the restitution order because he agreed to pay restitution for all the items initially requested by W.L. prior to July 10, 1998. The State points out that W.L.'s initial request contained the same categories of expenditures as were included in the final order and that the initial request totaled $2,075.86, rather than the $1,816.96 of the final restitution order. We decline to apply judicial estoppel to Johnson's challenge to the restitution order. We note that Johnson received jail time as well as the probation he asked for when he offered to pay restitution that included those items listed on the restitution form W.L. completed. Thus, the circuit court did not completely adopt Johnson's position. *See State v. Petty*, 201 Wis. 2d 337, 348, 548 N.W.2d 817, 821 (1996) ("[T]he party to be estopped must have convinced the first court to adopt its position." (citation omitted)).

¶ 25. As a final argument, the State contends that even if W.L.'s wages are not recoverable under WIS. STAT. § 973.20, the circuit court could have properly required repayment of the lost wages as a condition of probation under WIS. STAT. § 973.09(1)(a). As authority for this argument, the State cites *State v. Heyn*, 155 Wis. 2d 621, 456 N.W.2d 157 (1990). In *Heyn*, the supreme court concluded that the restitution provisions of § 973.09(1)(b) (1985–86) do not restrict the broad authority of the circuit court to condition probation on the satisfaction of any requirement which is reasonable and appropriate under § 973.09(1)(a) (1985–86).

¶ 26. While we do not dispute the State's reading of *Heyn*, we note that the published cases demonstrate that, depending on the posture of the case, courts have treated requests to re-characterize restitution as a reasonable and appropriate condition of probation in different ways. *See, e.g., State v. Ortiz*, 2001 WI App 215, ¶ 26, 247 Wis. 2d 836, 634 N.W.2d 860; *State v. Beiersdorf*, 208 Wis. 2d 492, 500–03, 561 N.W.2d 749, 753–54 (Ct. App. 1997). Because the record in this case is clear that the circuit court ordered Johnson to pay the lost wages as restitution and because Johnson challenged the order under the restitution statute before the circuit court, we decline the State's invitation to re-characterize the order as a reasonable and appropriate condition of probation. *See Ortiz*, 2001 WI App 215 at ¶ 26. Accordingly, we conclude that the circuit court erroneously exercised its discretion in requiring Johnson to repay J.M.K.'s stepfather's lost wages as restitution.

**Discovery Request.**

■

¶ 27. Johnson's final issue concerns the circuit court's denial of his request for discovery pursuant to WIS. STAT. § 973.20(14)(d), which provides that discovery is not available in restitution proceedings "except for good cause shown." We have not identified the standard of review that is applicable to this question because the parties have not done so and our resolution of the issue would be the same whether we applied *de novo* review or a more deferential standard.

¶ 28. Johnson requested all documentation, assessments, records, evaluations, reports and information related to all of J.M.K.'s counseling services, which she received approximately twice per month for about a year and one-half and for which services Johnson was requested to pay only $140. He also sought the names of all persons or agencies who have, at any time, evaluated, treated or counseled J.M.K. on any mental health matter irrespective of whether the treatment was related to this case. The circuit court concluded that Johnson had not met his burden of showing good cause because he had no evidence that the counseling was for anything other than the effects of the crime on J.M.K.

¶ 29. Beginning with *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), and comparing it to WIS. STAT. § 973.20(14)(d), Johnson argues that it was possible that J.M.K. had a pre-existing condition and that some portion of the counseling and medication expenses may not have been sufficiently related to Johnson's criminal conduct. As an initial matter, our decision in *Shiffra* must be understood in the context of a sexual assault case where it was Shiffra's position that the medical records may have contained exculpatory

information. The records at issue have no bearing on whether Johnson committed the crimes of which he was convicted.

¶ 30. Additionally, WIS. STAT. § 973.20(14)(d) presumes no discovery will be permitted unless the defendant shows "good cause." "Good cause" is not a defined term, but it does indicate an affirmative obligation on Johnson's part. However, Johnson took no steps to show good cause. For example, he made no effort to substantiate his speculation that the counseling sessions were excessive for the mistreatment he accorded J.M.K.[8] Furthermore, each session cost about $115, and J.M.K. received counseling for about a year and one-half, twice per month. Johnson's speculation that the $140 he was asked to pay was excessive flies in the face of common sense, given the number of visits and the cost of each visit. Accordingly, we conclude the circuit court did not err in concluding that Johnson failed to show good cause to be provided with the discovery he sought.

## CONCLUSION

¶ 31. We conclude that the circuit court's restitution order should not be vacated as untimely because there was a valid reason for holding the restitution proceedings outside of the statutory time period and because there was no prejudice to Johnson. We further conclude that the circuit court had authority under WIS. STAT. § 973.20 to require Johnson to reimburse the victim's stepfather for the expenses he incurred installing a home security system, but not for his lost wages.

---

[8] Additionally, J.M.K. was questioned extensively by Johnson's counsel at a later hearing, and she explained her fear of Johnson and that all the counseling sessions focused only on the effects of his criminal conduct on her mental health.

Finally, we conclude that the circuit court properly denied Johnson's request for discovery of the victim's counseling records. Accordingly, the order of the circuit court is affirmed in part and reversed in part.

*By the Court.*—Order affirmed in part and reversed in part.