COURT OF APPEALS
DECISION
DATED AND FILED

April 20, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1451-CR**

Cir. Ct. No. 2002CF176

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DARYL J. STRENKE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Polk County: R. MICHAEL WATERMAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Daryl Strenke appeals an amended judgment of conviction, entered upon his guilty plea, convicting him of second-degree

intentional homicide. Strenke also appeals the order denying in part his postconviction motion challenging the circuit court's restitution award. Strenke argues that the court erred by failing to vacate the restitution order as being "untimely requested." Strenke also challenges the amount of restitution ordered and the court's conclusion that Strenke had the ability to pay. Finally, Strenke asserts that the court erred by denying his ineffective assistance of counsel claim without an evidentiary hearing. We reject these arguments and affirm the judgment and order.

## BACKGROUND

¶2 In July 2002, the State charged Strenke with first-degree intentional homicide, based on allegations that he shot and killed his ex-girlfriend, Samantha Verby, with a shotgun in her trailer. Strenke then attempted to commit suicide by shooting himself in the face. Strenke pleaded guilty to a reduced charge of second-degree intentional homicide, and the parties jointly recommended thirty years' initial confinement followed by thirty years' extended supervision. Relevant to this appeal, the State mentioned at sentencing that "there may very well be restitution which will not be covered by crime victims['] compensation and we would like that part of the record." The circuit court ultimately followed the parties' joint sentence recommendation. The court also granted the State's request to submit its written request for restitution within sixty days, noting that defense counsel would get a copy and have thirty days to respond before the court determined whether a restitution hearing was necessary. The judgment of conviction noted that restitution was "to be determined."

¶3 In 2004, Strenke, by counsel, filed a postconviction motion to withdraw his guilty plea. That motion was denied, and Strenke did not appeal. In

November 2016, Strenke sent pro se correspondence to the circuit court requesting a review of the Department of Corrections' ("DOC") trust account documents and challenging the restitution reflected on his inmate obligation report. In a series of pro se filings that followed, Strenke continued to challenge the DOC's authority to withdraw money from his inmate account for restitution where there was no restitution hearing or restitution order.

¶4      In response to Strenke's filings, the circuit court informed the parties that an order signed on March 10, 2003, listed restitution in the amount of $4,580 to Samantha's father, Charles Verby, and $3,445 to Wisconsin's Crime Victim Compensation Program ("CVC"). The order was forwarded to the DOC, but it was never filed with the clerk of circuit court. Strenke continued to submit pro se filings disputing the amount of restitution. Because the State could not ultimately establish that the defense received notice of the 2003 restitution order, the court vacated that order and gave the State thirty days to submit a restitution request.

¶5      The State submitted a written restitution request. With respect to the CVC, the State sought $2,000 in burial expenses and $3,575 in mental health counseling expenses for Samantha's daughter, who was seven years old at the time of the murder. Attached to the written request was a restitution claim form completed by Charles in September 2002, in which he listed the following expenses: (1) $1,500 for trailer home to be destroyed; (2) $580 for "machine hire" to bury the trailer; (3) $600 for labor to clean up the area; and (4) $2,100 for "material cost to update upstairs for granddaughter, windows, exit doors, carpet, labor." Strenke objected to the restitution request, disputing the specific amounts sought and Strenke's ability to pay. Strenke also alleged the State had engaged in prejudicial delay without good cause, emphasizing Strenke's difficulty in obtaining evidence to dispute the claims fourteen years later.

¶6      After a restitution hearing, the circuit court rejected Strenke's motion to deny restitution based on the time delay and it awarded all but the $600 in labor costs sought by Charles.  The court also ordered Strenke to pay Charles an additional $3,848 in funeral expenses, representing the portion of the funeral and burial expenses that were not covered by the CVC.

¶7      Strenke, by new counsel, filed a postconviction motion challenging the restitution order, again asserting it should be vacated given the delay.  Strenke also challenged the restitution awarded for the trailer disposal and the home renovations necessary for Samantha's daughter to live with Samantha's parents. Strenke alternatively claimed that the restitution amount should be offset by the value of personal property he had stored at Charles's home.  In so arguing, Strenke noted that the circuit court awarded the remainder of funeral costs to Samantha's parents, although that amount had not been included in the State's restitution request.  Finally, Strenke alleged that his counsel was ineffective at the restitution hearing.

¶8      The circuit court agreed that it was error for it to order restitution to Charles for the additional $3,848 in funeral costs, as Strenke had no notice of that particular claim.  The restitution amount payable to Charles was therefore reduced to $4,180, while the $5,575 restitution ordered payable to CVC remained unchanged.  The court rejected the remainder of Strenke's arguments, including

4

his ineffective assistance of counsel claim, without a ***Machner***[1] hearing. This appeal follows.[2]

## DISCUSSION

## I. Circuit Court's Authority to Impose Restitution

¶9 The scope of a circuit court's authority to order restitution presents a question of statutory interpretation that this court reviews de novo. ***State v. Ziegler***, 2005 WI App 69, ¶10, 280 Wis. 2d 860, 695 N.W.2d 895. The restitution statute, WIS. STAT. § 973.20 (2019-20),[3] requires a circuit court to order restitution to a victim or a victim's estate "unless the court finds substantial reason not to do so and states the reason on the record." Sec. 973.20(1r).

¶10 Strenke argues that the circuit court erred by denying his motion to vacate the restitution order as being untimely requested. If restitution cannot be determined at sentencing, the statute sets forth a list of four alternative procedures, including time frames that the court "may" use to finalize the restitution amount. WIS. STAT. § 973.20(13)(c). These statutory time frames are directory—not mandatory. *See **Ziegler***, 280 Wis. 2d 860, ¶14. However, "directory" does not mean "discretionary or permissive" because the legislature plainly intended that the statutory time limits be followed. ***Id.*** Therefore, this court uses a two-part test

---

[1] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2] The Honorable Robert H. Rasmussen presided over Strenke's sentencing and signed the initial restitution order. The Honorable R. Michael Waterman presided over the restitution hearing and denied in part the postconviction motion challenging the second restitution order.

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

to assess whether to uphold restitution orders imposed outside the statutory time frames: (1) whether valid reasons existed for the delay; and (2) whether the defendant has been prejudiced by the delay. *Id.* There is no "pecking order" to the inquiries; rather, the court "must balance the length and reasons for the delay against the injury, harm or prejudice to the defendant resulting from the delay." *Id.*, ¶¶17-18.

¶11    Strenke argues that the State failed to show a valid reason for the delay because it provided no reason why it took fourteen years to provide him notice of the restitution request. Lack of notice notwithstanding, Strenke emphasizes that there was a five-month delay between the sentencing hearing and the date the original restitution order was signed in March 2003, thus already exceeding the time frames envisioned under the statute. This court, however, has recognized that there may be circumstances where a court will uphold a restitution order even where no valid reason existed for the delay. *Id.*

¶12    Here, the circuit court reasonably found that the five-month delay between the sentencing hearing and the order was "substantially consistent with the schedule set by the parties and [the circuit court]." Strenke, through counsel, expressly acquiesced to postponing restitution beyond the statutory time frames. Strenke was thus aware at sentencing that although restitution had not yet been determined, it would be. With respect to Strenke's challenge to the delay in ultimately holding a restitution hearing, the court properly recognized that rather than the fourteen-year delay Strenke portrayed, "[t]his is a case where restitution was made shortly after sentencing, but the defendant was denied fair notice." The court reasonably determined that the remedy for the lack of notice was a restitution hearing, not a complete denial of restitution.

¶13     Strenke nevertheless argues that he was prejudiced by the delay. Specifically, Strenke asserts that the restitution hearing was so far removed from the crime that he was denied the opportunity to obtain evidence challenging the restitution sought by Charles or to otherwise show a lack of mitigation by Charles. Strenke, however, does not explain why he would have been unable to provide evidence to rebut Charles's claims, nor does he specify what evidence he would have sought to introduce but for the passage of time.

¶14     Further, Charles testified that the only personal property he had possibly concerning Strenke was a snowmobile that belonged to Strenke's father. Therefore, we are not convinced Strenke was prejudiced by the restitution hearing delay. Moreover, the restitution order is consistent with the statute's primary goal of facilitating complete restitution of the victim and its secondary goal of rehabilitating the defendant. *See* ***State v. Sweat***, 208 Wis. 2d 409, 422, 561 N.W.2d 695 (1997) (noting that while restitution serves a dual purpose of making the victim whole and rehabilitating the defendant, the primary purpose of restitution is compensating the victim).

¶15     Citing ***Ziegler***, Strenke contends that the circuit court lacked the authority to order restitution. In ***Ziegler***, we held that the circuit court lacked authority to impose restitution fourteen years after the original entry of judgment. ***Ziegler***, 280 Wis. 2d 860, ¶1. There, as here, the judgment of conviction left restitution "to be determined." *Id.*, ¶3. These similarities aside, ***Ziegler*** is nevertheless distinguishable on its facts. In that case, the DOC requested a restitution determination more than nine years after the judgment of conviction, and two days later, the court amended the judgment to reflect over $100,000 in restitution. *Id.*, ¶4. The defendant moved to vacate the restitution ordered, the State did not oppose the motion, and the order was vacated. *Id.*, ¶5. Four years

7

later, the victim inquired about restitution after learning the defendant was soon to be released from prison. *Id.*, ¶¶6-7. The court ultimately held a hearing and ordered approximately $95,000 in restitution. *Id.*, ¶9.

¶16 On appeal, the State conceded there was no valid reason for the delay, but the parties contested whether the delay prejudiced the defendant. *Id.*, ¶¶15, 19. In concluding that the delay prejudiced the defendant, the *Ziegler* court recognized that the passage of time had resulted in lost documentation, noting that the victim could "not exactly recall the origin of all his calculations." *Id.*, ¶19. The delay also impeded the defendant's efforts to dispute any of the claimed damages. "More importantly," the court noted, the defendant had "acquired a legitimate expectation in the finality of the judgment against him," as he had served his prison sentence, he was out on parole, and the circuit court had earlier determined it lacked authority to impose restitution. *Id.*

¶17 Here, the State did not concede that restitution could not be imposed, the circuit court did not determine that it lacked authority to impose it, and Strenke still has many years to serve on his thirty-year initial confinement term. Thus, unlike the defendant in *Ziegler*, Strenke cannot establish the same expectation of finality against the imposition of restitution. It was therefore appropriate for the court to hold a restitution hearing and impose restitution in this matter.

## II. Challenge to the Amount of Restitution

¶18 Strenke alternatively challenges the amount of restitution ordered to Charles. As noted above, a primary purpose of restitution is to compensate the victim or, if the victim is deceased, the victim's estate. *See Sweat*, 208 Wis. 2d at 422. WISCONSIN STAT. § 973.20 "reflects a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of

8

making restitution." ***State v. Kennedy***, 190 Wis. 2d 252, 258, 528 N.W.2d 9 (Ct. App. 1994). Additionally, we are to "construe the restitution statute broadly and liberally in order to allow victims to recover their losses [that occur] as a result of a defendant's criminal conduct." ***State v. Anderson***, 215 Wis. 2d 673, 682, 573 N.W.2d 872 (Ct. App. 1997).

¶19 This mandate notwithstanding, the legislature has placed limits on the restitution a circuit court may order. Relevant to our present analysis, restitution awarded under WIS. STAT. § 973.20(5)(a) is limited in two ways. First, before a court may order restitution "there must be a showing that the defendant's criminal activity was a substantial factor in causing" pecuniary injury to the victim. ***State v. Johnson***, 2002 WI App 166, ¶16, 256 Wis. 2d 871, 649 N.W.2d 284. In making its determination, however, a court may take a defendant's "entire course of conduct into consideration," including "all facts and reasonable inferences concerning the defendant's activity related to the 'crime' for which the defendant was convicted, not just those facts necessary to support the elements of the specific charge of which the defendant was convicted." ***State v. Madlock***, 230 Wis. 2d 324, 333, 602 N.W.2d 104 (Ct. App. 1999). Put another way, a causal link for restitution purposes is established when "the defendant's criminal act set into motion events that resulted in the damage or injury." ***State v. Rash***, 2003 WI App 32, ¶7, 260 Wis. 2d 369, 659 N.W.2d 189.

¶20 Second, restitution is limited to "special damages ... which could be recovered in a civil action against the defendant for his [or her] ... conduct in the commission of a crime." WIS. STAT. § 973.20(5)(a). This limitation restrains a sentencing court from ordering the payment of "general damages"—that is, amounts intended to generally compensate the victim for damages such as pain and suffering, anguish, or humiliation. *See* ***State v. Behnke***, 203 Wis. 2d 43, 60,

9

553 N.W.2d 265 (Ct. App. 1996). The term "special damages," as used in the criminal restitution context, means "[a]ny readily ascertainable pecuniary expenditure paid out because of the crime." ***State v. Holmgren***, 229 Wis. 2d 358, 365, 599 N.W.2d 876 (Ct. App. 1999).

¶21 The determination of the amount of restitution to be ordered (and thus whether a victim's claim should be offset or reduced for any reason) is reviewed under the erroneous exercise of discretion standard. *See **Johnson***, 256 Wis. 2d 871, ¶7. When we review a circuit court's exercise of discretion, we examine the record to determine whether the court logically interpreted the facts, applied the proper legal standard, and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach. ***Id.*** Although the burden falls on a victim or the State to establish the amount of the pecuniary injury a victim has sustained on account of a crime, the defendant bears the burden of proving whether an offset should be allowed and in what amount. *See **State v. Walters***, 224 Wis. 2d 897, 907-08, 591 N.W.2d 874 (Ct. App. 1999).

¶22 Strenke argues that restitution for the $1,500 cost of destroying the trailer did not constitute special damages because destruction of the entire trailer was not a natural consequence of his actions. Strenke asserts that rather than destroy the trailer, Charles could have cleaned and sold the trailer, salvaged portions of it, or otherwise tried to mitigate the damage. We are not persuaded.

¶23 There was no dispute that the trailer belonged to Charles, and Strenke does not explain how the loss of the trailer does not constitute an "ascertainable pecuniary expenditure." *See **Holmgren***, 229 Wis. 2d at 365. To the extent Strenke claims the restitution statute only permits costs for damage to the trailer rather than destruction of the entire trailer, he is mistaken. The statute

specifically provides that if return of the property is "impossible, impractical or inadequate," the circuit court may order the defendant to pay for the "reasonable repair or replacement cost" or the value of the property. WIS. STAT. § 973.20(2)(am)2.

¶24    As recounted in the complaint, police found large puddles of blood in the trailer, with "what appeared to be human flesh on the ceiling above the shotgun." At the restitution hearing, Charles testified that he could not get the odor out of the trailer despite efforts to remove "clothes and stuff." The circuit court implicitly found that the trailer had no value as a result of the crime—it smelled too bad to repair or salvage. The court further found that any attempt to repair the trailer by cleaning it would have exceeded the $1,500 cost to destroy the trailer, so it awarded $1,500 as the trailer's "reasonable value." Strenke makes no argument that this finding is clearly erroneous. Having found that the cost to repair the trailer would have been at least $1,500, the court properly included that cost as part of its restitution order, consistent with the primary purpose of restitution—to advance society's interest in seeing victims made whole. *See Huml v. Vlazny*, 2006 WI 87, ¶20, 293 Wis. 2d 169, 716 N.W.2d 807.

¶25    Further, and despite Strenke's claim to the contrary, loss of the trailer occurred as a direct result of Strenke's actions. Blood and body parts left an odor that could not be removed. To the extent Strenke argues that exterior portions of the trailer could have been salvaged in order to mitigate the cost, he failed to provide any supporting evidence. Although Strenke disagrees with the circuit court's decision to award this restitution to Charles, he fails to establish an erroneous exercise of the court's discretion. *See Johnson*, 256 Wis. 2d 871, ¶7.

¶26 Strenke also argues that the $580 cost for renting an excavator to bury the trailer was unnecessary, especially when Charles had been told by police not to destroy the trailer. Strenke further argues that there was insufficient evidence of the excavator rental cost, and such a cost is not a typical consequence that would flow from his crime. The circuit court found that given the low value of the trailer and the comparatively high cost of cleaning, it was not unreasonable for Charles to destroy and bury the trailer. The court further found that $580 to do so was "quite reasonable." But for Strenke's crime, Charles would not have needed to dispose of the trailer. Ultimately, Strenke fails to show that the court erroneously exercised its discretion in ordering restitution related to burying the trailer.

¶27 Strenke also challenges the $2,100 cost to convert the attic of Charles's home into a livable space for Samantha's daughter. Strenke claims these costs do not "stem from the death of the victim," any damage was "done in the trailer," and there was no evidence the child could not stay in another part of the house. That Samantha's child would need a new place to live certainly stems from Strenke's actions in murdering her mother. Further, Charles testified that the Department of Social Services wanted the attic, formerly used only for storage, to be "updated and done right." Strenke again fails to establish that the circuit court erroneously exercised its discretion when it ordered restitution for the installation of new windows, exit doors, and carpet to create a livable space for Samantha's child.

## III. Ability to Pay

¶28 Next, Strenke claims the circuit court erred by concluding he had the ability to pay the ordered restitution. The court recognized Strenke would be in

custody until he was sixty-eight years old, that he suffers from a disability, and that he earned only a "modest income" in custody. Noting the "numerous letters" Strenke sent to the court regarding restitution, the court determined Strenke was "smart enough to bring all of that to the Court's attention." The court also stated that Strenke receives "gift income" from family members and, upon his release to extended supervision, "he would certainly be able to hold down a job and earn income that requires use of his brain as opposed to his back." Strenke has failed to show that the court erroneously exercised its discretion when concluding that he would have the ability to pay the less than $10,000 in restitution "little bit by little bit" for the rest of his life.

## IV. Ineffective Assistance of Counsel

¶29    Strenke contends that his counsel was ineffective at the restitution hearing by failing to present all available evidence showing his inability to pay. Strenke also argues that the circuit court improperly denied his ineffective assistance claim without a hearing.

¶30    A defendant who alleges ineffective assistance of counsel is not automatically entitled to an evidentiary hearing. To obtain an evidentiary hearing, a defendant's motion must allege, with specificity, both that counsel provided deficient performance and that the deficiency was prejudicial. *State v. Bentley*, 201 Wis. 2d 303, 313-18, 548 N.W.2d 50 (1996). If the motion alleges facts that entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing. *Id.* at 310. Whether a motion alleges facts that, if true, would entitle a defendant to relief is a question of law that we review independently. *Id.* However, if the factual allegations of the motion are insufficient or conclusory, or if the record irrefutably demonstrates that the defendant is not entitled to relief, the

13

circuit court may, in its discretion, deny the motion without a hearing. *Id.* at 309-10. When reviewing a court's discretionary act, this court utilizes the deferential erroneous exercise of discretion standard. *Id.* at 310-11.

¶31 The question for this court on review is whether Strenke's postconviction motion was sufficient to entitle him to a hearing, so we review "only the allegations contained in the four corners of [the] postconviction motion," not allegations in any brief. *See State v. Allen*, 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433. In his postconviction motion, Strenke claimed only that "[c]ounsel failed to present evidence that Mr. Strenke did not prepare documents on his own behalf that were submitted to the court, and counsel would be ineffective for failing to do so." This conclusory and undeveloped claim fails to allege facts that, if proven, would establish that Strenke's counsel was deficient and that he was prejudiced by any claimed deficiency. *See Bentley*, 201 Wis. 2d at 309-10.

¶32 As the circuit court noted, simply asserting that counsel failed to present evidence that Strenke received help with his pro se submissions does not set forth sufficient facts to establish that counsel was even aware that Strenke received help. Further, Strenke failed to argue how the knowledge that Strenke had assistance in preparing his submissions would have affected the court's finding that Strenke was able to pay the restitution ordered. Strenke was not entitled to an evidentiary hearing, and the court properly denied the ineffective assistance claim. *See id.* at 313-18.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14