COURT OF APPEALS
DECISION
DATED AND FILED

July 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1917**

Cir. Ct. No. **2022JV11**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

IN THE INTEREST OF C.J.L., A PERSON UNDER THE AGE OF 18:
STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

C.J.L.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Vernon County: LISA A. McDOUGAL, Judge. *Reversed and cause remanded with directions*.

¶1 KLOPPENBURG, P.J.[1] C.J.L. appeals part of the restitution ordered in his juvenile adjudication. He and a companion had entered a dance

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

studio, disabled the two cameras they encountered, and stolen a portable speaker. C.J.L. challenges restitution for two items: a surveillance subscription, purchased after the theft, for the studio's security camera; and damages to the studio's dance floor. Unlike the adult criminal restitution statute, the juvenile statute, WIS. STAT. § 938.34(5)(a), permits restitution only for physical injury to a person or damage to property. Because of the lack of evidence that C.J.L. damaged either the security camera or the floor, the restitution order is reversed as to those two items.

## BACKGROUND

¶2 The delinquency petition alleged that the studio owner called the police to report a theft. She had entered her studio and noticed a missing speaker, some moved equipment, and handprints on sliding glass doors. A few days later, police received a tip that C.J.L. had the missing speaker. When an officer confronted C.J.L., he confessed to having stolen the speaker with his companion. C.J.L. then turned the speaker over to the officer. C.J.L. told the officer that he thought the place from which he'd taken the speaker was a karate studio, but he agreed that it might have been a dance studio.

¶3 C.J.L. entered a no-contest plea to theft and one other count unrelated to the studio. The circuit court imposed supervision lasting until C.J.L. turned 18 a few months later.

¶4 At a separate hearing on restitution, the studio owner testified as follows. Cords had been ripped out of two cameras; one was used to record dance rehearsals and the other was the security camera. The cord for the rehearsal camera had been integrated with the camera, so that camera was destroyed. The security camera had a detachable cord, so it only needed to be plugged back in.

2

¶5 The studio owner sought restitution for a one-year paid subscription to a surveillance service that would record the feed from her security camera and permit her to access the recordings later. She had purchased this subscription a few weeks after the theft. She testified that with this subscription, in the future, if her security camera were to be disabled or destroyed, she would still be able to access recordings it had previously made.

¶6 The studio owner also testified about damage to the studio floor. She described and presented photographs of some "gouge marks" and a smiley face scratched into one area of the floor. She had noticed this damage when she cleaned the floor. Cleaning the specialized dance flooring is a labor-intensive process, which requires her to be on her hands and knees "inches from the floor." After the theft in October, she next cleaned the floor in January. This is when she discovered the marks. She had previously cleaned the floor shortly before the theft, and at the time of that prior cleaning, the floor had been undamaged.

¶7 The studio owner's testimony about the damage to the studio floor continued as follows. Before and after the theft, the security camera notified her when the camera detected a person in the studio, and "there was never … anybody in there that was not supposed to be in there." After the theft, there was "never a notification" of activity in the studio that she "was not able to check."

¶8 Also, during dance classes, "that's not an area that we dance on regularly. It's where the bars for our ballet studio are meant to be kept." When the studio owner was asked how the damage to the floor could have gone unnoticed for the three months between October and January, she testified that the only time there was dancing in the area of the damage was when the dancers were in pointe shoes. She testified that dancing on pointe is "very meticulous work"

and that dancers on pointe are "never looking down" because looking down can lead to injury.

¶9      The circuit court announced its decision on restitution at a separate hearing. It said that the studio owner's "testimony is, frankly, very credible, and it makes a lot of sense to me." It added that it found "a causal nexus between the crime that was adjudicated in this case and the conduct of the crime and the damage that was done" and that it reached these conclusions "to a preponderance of the evidence." The court found that C.J.L. had the ability to pay the entire amount the studio owner requested, and ordered him to pay for replacement of the damaged floor as well as one year's subscription to the surveillance service for the security camera.

¶10     C.J.L. appealed the restitution order. During the pendency of this appeal he completed his supervision. The record suggests, but does not show conclusively, that C.J.L. paid the restitution before his supervision ended.

## DISCUSSION

### I. Mootness

¶11     While the parties chiefly dispute the merits of the case, they also present a preliminary question: whether this appeal is moot because C.J.L.'s order terminated when he turned 18.

¶12     An issue "is moot when 'a determination is sought which, when made, cannot have any practical effect upon an existing controversy.'" *City of Racine v. J-T Enters. of Am., Inc.*, 64 Wis. 2d 691, 700, 221 N.W.2d 869 (1974) (quoted source omitted). It is true that the dispositional order here has expired, and therefore no longer obligates C.J.L. to submit to supervision or other

conditions. However, it is the restitution component of that order that is in dispute. If, as C.J.L. argues, he was ordered to pay restitution for items that the statute does not permit, then he may owe less than the order requires him to pay, or if he has paid it off already, he may be owed some of that money back. For that reason, it cannot be said that a decision on restitution will lack "any practical effect" on the parties, and, accordingly, the issue is not moot.

## II. Standard of Review

¶13 Whether the circuit court had the authority to include a particular item in a restitution order is a question of law that the appellate court reviews de novo. *See* *State v. Michael S.L.*, No. 2010AP2352, unpublished slip op., ¶4 (WI App Jan. 19, 2011) (stating that, in a juvenile proceeding, whether a restitution order "complies with the restitution statute is reviewed de novo") (citation omitted);[2] *R.W.S. v. State*, 162 Wis. 2d 862, 869, 471 N.W.2d 16 (1991) (whether a circuit court has authority to order restitution on dismissed but read-in delinquency petitions is a question of law); *State v. Lee*, 2008 WI App 185, ¶7, 314 Wis. 2d 764, 762 N.W.2d 431 (whether a circuit court has authority to order restitution under certain facts is a question of law). The court's determination of the amount of restitution is reviewed for an erroneous exercise of discretion. *Michael S.L.*, No. 20210AP2532, ¶4. Under this standard, this court must uphold the circuit court's decision if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion

---

[2] *See* WIS. STAT. RULE § 809.23(3)(b), (permitting the citation of authored unpublished opinions issued after July 1, 2009, for their persuasive value).

that a reasonable judge could reach." ***Loy v. Bunderson***, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

### III. Security Camera Subscription

¶14     The juvenile restitution statute provides, in relevant part, that "if the juvenile is found to have committed a delinquent act that resulted in damage to the property of another, or actual physical injury to another excluding pain and suffering," then the court may "order the juvenile to repair the damage to property or to make reasonable restitution for the damage or injury, either in the form of cash payments or, if the victim agrees, the performance of services for the victim, or both." WIS. STAT. § 938.34(5)(a).

¶15     Under this statute, C.J.L. could be liable for the expense of the security camera subscription only if that expense would repair "damage to the property of another" resulting from C.J.L.'s delinquent acts. *See* WIS. STAT. § 938.34(5)(a).  The State argues that C.J.L.'s acts "destroyed the first surveillance camera" and that the cost of a new security camera that included the surveillance subscription was a reasonable replacement for that destroyed camera.  But this appears to be a misreading of the record.  As has already been noted, there were two cameras in the studio: a security camera, and a second camera used to record

dance performances.[3] It was the latter camera that C.J.L. and his companion destroyed, and C.J.L. does not contest the restitution he was ordered to pay for this second camera. However, there is no evidence that the security camera was destroyed or damaged during the theft. As the studio owner testified, the security camera was simply unplugged, and it worked when it was later plugged back in. Therefore, the cost of a surveillance subscription for the security camera cannot reasonably be said to be restitution for "damage to the property of another," because C.J.L. did not damage the security camera.

¶16 The circuit court appears to have relied on considerations that are authorized by the adult criminal restitution statute, but not the juvenile restitution statute. I now explain the textual differences in the two statutes that support the conclusion that the juvenile restitution statute does not authorize restitution for the security camera subscription here.

¶17 As stated, the juvenile statute authorizes restitution for only two types of harm that a juvenile's delinquent act might cause: physical injury to a person (not at issue in this case) and "damage to the property of another." WIS. STAT. § 938.34(5)(a). This statute differs in important ways from the one governing restitution in adult criminal cases, WIS. STAT. § 973.20. While § 973.20

---

[3] Confusion on this point may explain why C.J.L.'s attorney stated, before any evidence had been taken at the restitution hearing, that C.J.L. had no objection to paying restitution for the subscription for the security camera. On appeal, the State suggests that this comment amounted to a "constructive" stipulation. I reject that suggestion. Given that both the parties and the circuit court expressed confusion over the two cameras at various points, and given that C.J.L.'s counsel had, at a prior hearing, laid out C.J.L.'s objection to paying for the subscription, it would be unreasonable to conclude that counsel's stray comment was a concession on this issue. Moreover, the State's stipulation suggestion rests on the premise that the security camera was "broken" and that a new security camera was purchased. As explained in the text, the evidence establishes as undisputed that the security camera was neither damaged nor replaced.

also authorizes restitution for physical injury to persons and damage to property, it goes on to lay out many additional items for which restitution can be ordered. These include psychological and psychiatric care for a victim, § 973.20(3)(a); reimbursement for lost income, § 973.20(3)(c); and "all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing," § 973.20(5)(a). "Special damages" in this context means "the victim's actual pecuniary losses" attributable to the crime, as opposed to other sorts of harms, such as pain, suffering, or anguish, which are not "'easily estimable in monetary terms.'" *State v. Stowers*, 177 Wis. 2d 798, 804-05, 503 N.W.2d 8 (Ct. App. 1993) (citing *Lawrence v. Jewell Cos., Inc.*, 53 Wis. 2d 656, 660, 193 N.W.2d 695 (1972)).

¶18    Applying WIS. STAT. § 973.20, this court has permitted restitution for a security system in adult criminal cases. In *State v. Johnson*, 2002 WI App 166, 256 Wis. 2d 871, 649 N.W.2d 284, the defendant was convicted of false imprisonment for an episode in which he detained, harassed, and physically abused a minor female. *Id.*, ¶2. After the crime, the girl's stepfather bought a home security system because the girl continued to be afraid of Johnson, who had threatened her. *Id.*, ¶21. The circuit court ordered Johnson to pay restitution for the cost of this security system, and this court affirmed. *Id.* We concluded that the cost of the security system was properly "an item of … special damages in this case" as it was purchased in an effort to bolster the sense of security the victim had lost due to Johnson's criminal acts. *Id.* Similarly, in *State v. Queever*, 2016 WI App 87, ¶1, 372 Wis. 2d 388, 887 N.W.2d 912, this court upheld restitution for a home security system installed in a home after the defendant had repeatedly burglarized it.

¶19    In this case, the circuit court noted that the requested subscription for the surveillance camera would "bring [the studio owner] peace of mind" and also referred to the restitution it ordered as "special damages."  However, unlike the adult criminal restitution statute at issue in ***Johnson***, 256 Wis. 2d 871, the juvenile statute does not permit restitution for "special damages" but only for "damage to the property of another."  "The words of the juvenile statute are distinct in its limitation to 'damage to property.'  It says nothing about special damages, lost income, or damages that could be recovered in a civil action."  ***State v. J.P.***, No. 2017AP1905, unpublished slip op., ¶60 (WI App Sept. 5, 2018).  Because this is a juvenile, not criminal, case, the court was not authorized to order C.J.L. to pay for measures aimed at protecting the studio's security in the future, relating to a security camera that was not damaged as a result of C.J.L.'s delinquent acts.

### IV.  Damage to the Floor

¶20    The question on appeal regarding the damage to the studio floor is whether C.J.L.'s delinquent acts caused it: whether his acts "resulted in damage to the property of another" as the statute requires.  *See* WIS. STAT. § 938.34(5)(a).  In ***Michael S.L.***, No. 2010AP2352, ¶6 n.3, this court assumed without deciding that the juvenile statutory phrase "resulted in" invokes the same causation test applied in adult criminal restitution cases.  This "causal nexus" test asks whether "the defendant's criminal activity was a substantial factor in causing damage.  The defendant's actions must be the precipitating cause of the injury and the harm must have resulted from the natural consequences of the actions."  ***State v. Canady***, 2000 WI App 87, ¶9, 234 Wis. 2d 261, 610 N.W.2d 147 (citations, alterations, and internal quotation marks omitted).

¶21 The parties agree that this same test applies. But, the precise contours of the "causal nexus" test are not of great importance here, because the issue is not about what role C.J.L.'s acts had in bringing about the harm: he or his companion either did the scratching, carving, and gouging in the floor, or they did not. To illustrate the point, in **Canady**, the question was whether the defendant's act of resisting arrest had a "causal nexus" to the damage done when the arresting officer seized a pry bar from the defendant and tossed it out of reach, cracking a glass door. **Id.**, ¶¶2, 11-12. This court found that although Canady was not the one who threw the pry bar, his resisting arrest was a step in the chain of events leading to the damage. **Id.**, ¶12. Here, by contrast, there is no evidence of a chain of events leading to the floor damage. Rather, the question is whether C.J.L. or his companion directly did the scratching, carving, and gouging in the floor. If C.J.L. did commit or participate in these acts, then he necessarily caused the damage regardless of what legal formulation is applied. If he did not, and someone else did the scratching, carving, and gouging in the floor at some other time, then C.J.L.'s conduct was not a "substantial factor" in causing the damage.

¶22 The relevant evidence here, some of which has already been recited, is as follows. C.J.L.'s theft from the studio occurred in the middle of October 2022. According to the studio owner's testimony, the studio owner discovered the damage in January 2023, the first time since the theft that she did her periodic meticulous cleaning of the floor on her hands and knees. In the intervening three months, she dry-mopped the floor, but not where the damage occurred. In those same three months, the security camera never alerted her with a notification that she "was not able to check." Also during this three-month period, the studio hosted twice-a-week class periods, with each period lasting several hours. The marks could have gone undetected all this time because the damaged area of the

10

floor was used solely for pointe work, and dancers on pointe never look down. The circuit court found the studio owner "very credible," and neither party on appeal has suggested otherwise.

¶23 As C.J.L. argues, the studio owner's truthful testimony could not provide any evidence tying him to the marks on the floor, other than the bare fact that he had been in the studio for a brief time three months before the marks were discovered. There is nothing in the delinquency petition or elsewhere in the record suggesting that C.J.L. or his companion damaged the floor, and C.J.L. did not admit to doing so at any point in the proceedings. Further, during the three months between the theft and the discovery of the marks, the twice-weekly dance classes meant that many children spent multiple hours in the studio. The lack of any evidence tying C.J.L. to the damage, combined with the passage of time and traffic through the studio, renders it speculative to conclude that it was C.J.L., and not any of the studio's other visitors over the months, who made the "smiley face" and other marks on a rarely used section of the floor. For this reason, I conclude that the portion of the restitution order concerning damage to the floor constitutes an erroneous exercise of discretion. *See **State v. C.W.***, 142 Wis. 2d 763, 768, 419 N.W.2d 327 (Ct. App. 1987) (superseded by statute on other grounds) (speculative conclusion constitutes erroneous exercise of discretion).

## CONCLUSION

¶24 For the reasons stated, the restitution order is reversed and this case is remanded to the circuit court with the direction that a new order be entered removing the amounts attributable to the security camera subscription and the damage to the studio floor.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.